## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FILED

U.S. DISTRICT COURT

ROBERT W. ROBAR )
And )
JOAN A. ROBAR, )    CIVIL ACTION NO.
Plaintiffs )
)
v. )   # 05 - 30127 - KPN
)
OCWEN FEDERAL BANK, FSB )
And )
OCWEN FINANCIAL CORPORATION, )
Defendants )

FILING FEE PAID:
RECEIPT # 305454
AMOUNT $ 250.00
BY DPTY CLK PIGA
DATE 5/31/05

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.    Robert W. Robar is an individual who resides at 52 Crystal Avenue in Springfield, Massachusetts.

2.    Joan A. Robar is an individual who resides at 52 Crystal Avenue in Springfield, Massachusetts.

3.    Ocwen Federal Bank, FSB, (hereinafter "Ocwen")  is a federal bank having a principal place of business at 2400 Lemoine Street, Fort Lee, New Jersey, 07024, and is an affiliate of Ocwen Financial Corporation.

4.    Ocwen Financial Corporation (hereinafter "Ocwen Finanacial") is a corporation having a principal place of business at 1675 Palm Beach Lakes Blvd., West Palm Beach, Florida, 33401 and a holding company for a number of related companies,

including Ocwen Federal Bank. Ocwen and related companies are under the direction of and ultimately responsible to Ocwen Financial for their corporate actions.

## JURISDICTION

5.      The Court has jurisdiction over the subject matter of this action pursuant to the provisions of 28 U.S.C. 1331 in that the defendants' conduct violated the provisions of the Real Estate Settlement Practices Act, 12 U.S.C. Section 2601 *et seq.* and 28 U.S.C. Section 1332(a) (3) in that the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different states.

## FACTUAL BACKGROUND

6.      On  December 19, 1986, Robert and Joan Robar entered into a loan agreement secured by a mortgage on their property at 50-52 Crystal Avenue, Springfield, Massachusetts (hereinafter "mortgage loan") with The Money Store/Massachusetts, Inc. A copy of the note and mortgage is attached hereto as Exhibit A.

7.      At some time prior to December 8, 1995, TMS Mortgage Inc., d/b/a The Money Store ("The Money Store") became successor by merger to The Money Store/ Massachusetts, Inc.

8.      On April 21, 1997, The Money Store sold and assigned the right to collect payments on the mortgage loan to Ocwen Federal Bank, FSB (hereinafter "Ocwen").

9.      Both Robert Robar and Joan Robar have filed for Chapter 13 Bankruptcy protection. They filed successive and overlapping Chapter 13 Bankruptcy Plans. Mr. Robert Robar filed his case in 1992 (United States Bankruptcy Court, District of Massachusetts Case No. 92-43340) and Mrs. Joan Robar filed her case in 1995 (United States Bankruptcy Court, District of Massachusetts Case No.95-43255).

10.     The respective Chapter 13 Plans of Robert Robar and Joan Robar were each approved by the Bankruptcy Court and each successfully completed with full discharges given to both persons in their respective cases.

11.     Because Joan Robar filed an amended plan subsequent to the initiation of her Chapter 13 case, she had a five month post-petition period when no payments were made to The Money Store (Ocwen's predecessor in interest). The Money Store filed a Motion for Relief from Stay in Joan Robar's case as a result of this five month period of non-payment on the mortgage. An agreement was reached between Joan Robar and The Money Store concerning the payments for this five month period. This Agreement was made the subject of a Joint Motion for Approval of Stipulation and Order. A copy of that Joint Motion and the Bankruptcy Court's approval of the same are attached as Exhibit B.

12.     The Stipulation (Exhibit B) in substance provided that the five months of post-petition arrearages would be paid in the five months of February through June of 1996 with five payments of $610.35 in addition to the regular mortgage payments of $610.35 for those months.

13.     Joan Robar made the double payments for the five months provided in the Stipulation and eliminated all arrearages owed. The Money Store and Ocwen (its

3

successor in interest) have not, however, credited her account with these payments and still refuse to do so.

14.    Ocwen on March 9, 1999, brought a Motion for Relief from Stay against Joan Robar alleging that she had not made seven payments. Joan Robar, through counsel, contacted Ocwen and informed it that all payments were current, that Ocwen had not credited the five double payments made and that there were checks to prove payment of the additional two payments alleged. Subsequent to the receipt of this information, Ocwen, through its counsel, filed a motion with the Bankruptcy Court to withdraw its motion for relief from stay. In that withdrawal, Ocwen explicitly stated that "the debtors are now current of their post-petition payments". Copies of the Bankruptcy Court's Order denying the Motion for Relief as moot and allowing the Motion to Withdraw are attached hereto as Exhibit C and by this reference made a part hereof.

15.    All mortgage payments due since that time have been paid and copies of the canceled checks are in the Robars' possession. The receipt of the checks is also noted on statements from Ocwen detailing the mortgage transactions. The checks for the last three payments owed on the mortgage, for November and December of 2001 and January of 2002 were sent certified mail, return receipt requested, but were refused by Ocwen.

16.    Notwithstanding the timely and full payment of all mortgage payments due under the note and mortgage on plaintiffs' premises at 50-52 Crystal Avenue in Springfield, Massachusetts, the defendants through counsel made demand for alleged back due payments of $3,479.34 by letter dated October 22, 2001. See Exhibit D attached hereto and by this reference made a part hereof.

4

17.     Notwithstanding the timely and full payment of all mortgage payments due under the note and mortgage on plaintiffs' premises at 50-52 Crystal Avenue in Springfield, Massachusetts, the defendants through counsel declared plaintiffs in default on their mortgage and accelerated the same by letter dated December 28, 2001. See Exhibit E attached hereto and by this reference made a part hereof.

18.     The Robars have paid their mortgage in full; owe nothing to Ocwen and were and are entitled to a discharge of that mortgage from Ocwen. Debtors orally contacted defendant Ocwen during the fall of 2001 to explain that they were current on their payments, to resolve the situation and to secure a discharge of the mortgage. By letter dated January 26, 2002, counsel for plaintiffs contacted counsel for Ocwen and demanded that Ocwen accept the last three mortgage payments and grant a discharge of mortgage to the Robars. A copy of that letter is attached hereto as Exhibit F and by this reference made a part hereof.

19.     By letter dated April 18, 2002, Ocwen stated that it would not accept the last three payments, restated its claim that five payments were missing and refused to grant a discharge of mortgage. A copy of that letter is attached hereto as Exhibit G and by this reference made a part hereof.

20.     By letter dated July 11, 2002, through counsel, Ocwen again stated that plaintiffs were in default on their mortgage and again threatened foreclosure proceedings. A copy of this letter is attached hereto as Exhibit H and by this reference made a part hereof.

21.     Defendants notified the national credit bureaus that they had started foreclosure proceedings against plaintiffs.  A notification of foreclosure proceedings is

stated on a credit report dated October 8, 2002, a copy of which is attached hereto as Exhibit I and by this reference made a part hereof.

22.    In April of 2002 the plaintiffs' only grandchild (a granddaughter whom they had raised since birth) was taken from their home by the Massachusetts Department of Social Services in connection with a custody dispute between the birth mother and their son. The granddaughter was five years old at the time.

23.    In order to raise the substantial legal fees required to rectify the injustice done by this and related actions by the Commonwealth of Massachusetts and the birth mother, the plaintiffs attempted to borrow money using the equity in their home as a basis for the loan.

24.    The plaintiffs were unable to borrow the desperately needed funds to save their granddaughter because Ocwen claimed a mortgage on the premises, had wrongfully begun foreclosure proceedings and had notified the national credit bureaus of these facts. In so doing, the defendants' wrongful actions destroyed the plaintiffs' ability to use the equity in their home for purposes of raising funds.

25.    Because they were not able to borrow against their equity in their home due to the wrongful actions of defendants in refusing to issue a discharge of mortgage and claiming a mortgage owed and foreclosure proceedings begun, plaintiffs were forced to use alternative methods of raising funds.

26.    In order to raise a part of the funds required for legal fees and court costs in connection with the legal actions required to secure the return of their granddaughter to their home, the plaintiffs were forced to prematurely liquidate annuities which each

6

owned. In so doing Joan and Robert Robar incurred tax penalties and interest of approximately $13,000.00 and loss future interest and tax deferment on said funds.

27.    For the remainder of their legal fees and court costs, the plaintiffs were forced to use their current income by deferring debts to other persons and incurring additional debt, including substantial debts to attorneys.

28.    Plaintiffs suffered emotional and physical distress due to the fact that they were nor able to borrow against their home. Their inability to borrow against their home was the direct result of defendant Ocwen and defendant Ocwen Financial's refusal to properly credit plaintiffs with mortgage payments made, to accept plaintiffs' last three mortgage payments, to issue plaintiffs a mortgage discharge and the erroneous notification to the national credit bureaus that plaintiffs owed on a mortgage and were in foreclosure proceedings.

29.    As a result of the aforementioned wrongful actions by defendants, Joan Robar became depressed; she saw a physician and was prescribed medication for this depression; she became anxious and was unable to sleep and lost her appetite.

30.    As a result of the aforementioned wrongful actions by defendants, Robert Robar became severely depressed, his Crohns Disease worsened (with internal bleeding), his physical condition deteriorated, his blood pressure rose greatly, he began having nightmares and could not sleep for more than three hours a night. Mr. Robar lost weight and suffered from great anxiety. His physician prescribed medication for his depression and blood pressure and for related conditions.

7

31.    In April and May of 2004 the plaintiffs were about to secure a mortgage from a mortgage company based on a representation made to the mortgage company by Ocwen that it would not issue a discharge of mortgage but amend the credit report and state to the mortgage company that plaintiffs' account was a charge-off. At the last moment, Ocwen broke its promise and refused to change the status quo and the mortgage was not granted for that reason by the other mortgage company.

32.    By letter dated February 5, 2003, Ocwen, based on a wrongful claim of an existing mortgage, informed plaintiffs that it had purchased homeowners insurance on the property and that the plaintiffs were responsible for the expense. A copy of that letter is attached hereto as Exhibit J and by this reference made a part hereof.

33.    On information and belief, Defendants Ocwen and Ocwen Financial have had and are engaged in a pattern and practice of claiming that additional monies are owed on a mortgage at the time of its completion and demanding payment of the same before issuing a discharge for the mortgage.

<u>COUNT ONE—BREACH OF CONTRACT</u>

34.    Plaintiffs reallege and incorporate by reference paragraphs one through thirty-three of the Complaint as set forth above.

35.    Defendants Ocwen and Ocwen Finanacial breached the terms of their mortgage agreement with Plaintiffs by failing to timely discharge the Plaintiffs first mortgage obligation after receiving payment in full of the same.

8

36.    Defendants Ocwen and Ocwen Financial further breached the terms of their mortage agreement with Plaintiffs by demanding funds in excess of the full amount owed before they would consider the mortgage satisfied and issue a discharge of mortgage.

37.    As a result of the actions and inactions of Defendant Ocwen and Ocwen Financial, Plaintiffs have suffered certain and definite financial loss.


## COUNT TWO—VIOLATION OF RESPA, 12 U.S.C. SECTION 2605


38.    Plaintiffs reallege and incorporate by reference paragraphs one through thirty-seven of the Complaint as set forth above.

39.    Defendants failed to adequately respond, take action or otherwise investigate the substance of Plaintiffs' requests in violation of the mandates set forth in 12 U.S.C. Section 2605(e) and Regulation X, 24. CFR pt. 3500.

40..    As a result of Defendant Ocwen and Ocwen Financials' violation of Respa as set forth above, Plaintiffs have suffered financial harm and required to expend money for attorney fees and costs of litigation.


## COUNT THREE—BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING


41.    Plaintiffs reallege and incorporate by reference paragraphs one through forty-one of the Complaint as set forth above.

42.    Defendants Ocwen and Ocwen Financials' intentional and deliberate misconduct as set forth herein constitutes a violation of the covenant of good faith and fair dealing implicit in the mortgage agreement between the parties.

43.    As a direct and proximate result of Defendant Ocwen and Ocwen Financials' misconduct, Plaintiff suffered and continues to suffer financial loss.

<u>COUNT FOUR—VIOLATION OF G.L. c 93A</u>

44.    Plaintiffs reallege and incorporate by reference paragraphs one through forty-three of the Complaint as set forth above.

45,    At all relevant times the Defendants Ocwen and Ocwen Financial were engaged in trade or commerce

46.    Defendants Ocwen and Ocwen Financial do not maintain a place of business or keep assets within the Commonwealth of Masachusetts.

47.    Defendants Ocwen and Ocwen Financials' actions in (1) refusing to issue a discharge of mortgage to Plaintiffs, (2) in threatening to initiate foreclosure proceedings, (3) in requiring Plaintiffs to pay more than owed under the mortgage agreement in order to secure a discharge,(4) in stating of Plaintiffs' credit reports that Plaintiffs owed money on the mortgage and were in foreclosure proceedings and (5) in failing to note the claimed mortgage arreages as a charge-off as Defendants represented they would do to the Plaintiffs, constitute unfair and deceptive acts and practices within the meaning of and in violation of G.L. c. 93A.

10

48.    The actions of Defendants Ocwen and Ocwen Financial described herein were performed willfully and knowingly.

49.    As a result of Defendants Ocwen and Ocwens Financials' action and conduct in violation of G.L. c 93A, Plaintiffs have suffered financial loss and damage from emotional distress.

## COUNT FIVE—NEGLIGENCE

50.    Plaintiffs reallege and incorporate by reference paragraphs one through forty-nine of the Complaint as set forth above.

51.    Defendants Ocwen and Ocwen Financial owed a duty to properly administer the Plaiintiffs' mortgage loan as provided for under the Real Estate Settlement Practices Act, 28 U.S.C. Sections 2601-17 and Regulation X, 24 C.F.R. pt 3500.

52.    Defendants Ocwen and Ocwen Finanicial negligently and carelessly administered the Plaintiffs' loan agreement in violation of RESPA, 28 U.S.C. Sections 2601-17 and Regulation X, 24 C.F.R. pt 3500.

53.    As a result of the negligent and careless manner in which the Defendants maintained the Plaintiffs' account, the Plaintiffs have suffered financial loss, damage to their credit and good name and mental anguish and physical and emotional distress.

## COUNT SIX—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## UPON JOAN ROBAR

54.    Plaintiffs reallege and incorporate by reference paragraphs one through fifty-three of the Complaint as set forth above.

55.    The actions of Defendants Ocwen and Ocwen Financials' in (1) refusing to issue a discharge of mortgage to Plaintiffs, (2) in threatening to initiate foreclosure proceedings, (3) in requiring Plaintiffs to pay more than owed under the mortgage agreement in order to secure a discharge,(4) in stating of Plaintiffs' credit reports that Plaintiffs owed money on the mortgage and were in foreclosure proceedings (5) in failing to note the claimed mortgage arreages as a charge-off as Defendants represented they would do to the Plaintiffs and in (6) the administration of the mortgage loan agreement were negligent and constituted extreme and outrageous conduct resulting in emotional and physical distress to Plainitff Joan Robar.

56.    As a result of the emotional distress inflicted upon Plaintiff Joan Robar by Defendants Ocwen and Ocwen Financial, Plaintiff Joan Robar became depressed and was unable to sleep and loss her appetite.

## COUNT SEVEN—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## UPON ROBERT ROBAR

57.    Plaintiffs reallege and incorporate by reference paragraphs one through fifty-six of the Complaint as set forth above.

58.    The actions of Defendants Ocwen and Ocwen Financials' in (1) refusing to issue a discharge of mortgage to Plaintiffs, (2) in threatening to initiate foreclosure proceedings, (3) in requiring Plaintiffs to pay more than owed under the mortgage agreement in order to secure a discharge,(4) in stating of Plaintiffs' credit reports that Plaintiffs owed money on the mortgage and were in foreclosure proceedings (5) in failing to note the claimed mortgage arreages as a charge-off as Defendants represented they would do to the Plaintiffs and in (6) the administration of the mortgage loan agreement were negligent and constituted extreme and outrageous conduct resulting in emotional and physical distress to Plainitff Robert Robar.

59.    As a result of the emotional distress inflicted upon Plaintiff Robert Robar by Defendants Ocwen and Ocwen Financial, Plaintiff Robert Robar's Crohns disease worsened (including internal bleeding), he lost weight, he could not sleep more than three hours a night, he suffered from high blood pressure, he had nightmares and suffered from great anxiety and depression (for all of which he received medication). Plaintiff Robert Robar continues to suffer from said ailments caused by Defendants negligent actions.

## COUNT EIGHT—REQUEST FOR PERMANENT INJUNCTION

60.    Plaintiffs reallege and incorporate by reference paragraphs one through fifty-nine of the Complaint as set forth above.

61.    Defendants Ocwen and Ocwen Financial have refused and continue to refuse to issue a discharge of mortgage for the mortgage ssecuring the loan agreement between the parties.

13

62.     Defendants Ocwen and Ocwen Financial have refused and continue to refuse to correct Plaintiffs' national credit reports to reflect the fact that Plaintiffs owe nothing on the mortgage; that Plaintiffs have paid off if full all sums owed to Defendants and that Plaintiffs are not facing foreclosure proceedings, all to the detriment of Plaintiffs' credit rating and standing in the community.

63.     Plaintiffs have suffered and continue to suffer immediate and irreparable harm and injury and have no adequate remedy at law.

WHEREFORE, Plaintiffs' Joan and Robert Robar request that this Honorable Court grant relief as follows:

(1)     That a permanent injunction be granted ordering Defendants to issue a discharge of mortgage on the premises at 52-54 Crystal Avenue in Springfield, Massachusetts.

(2)     That a permanent injunction be granted ordering Defendants to correct the national credit reports on Plaintiffs to show that they have paid the mortgage in full and that there is and has been no foreclosure proceedings against said premises by Defendants/

(3)     Grant judgment for Plaintiffs and against Defendants for the damages suffered by Plaintiffs, with said damages being in excess of $75,000.00

(4)     That said damages suffered by Plaintiffs be trebled as provided by G.L c. 93A.

(5)     That Plaintiffs be granted their reasonable attorney fees and costs.

(6)     and That this Court grant such other relief as it deems just and reasonable.

14

PLAINTIFFS DEMAND TRIAL BY JURY

Respectfully Sumbitted
Joan and Robert Robar

By _Lawrence R Ehrhard_
Lawrence R. Ehrhard
Their Counsel
71 Academy Drive
Longmeadow, MA 01106
BBO #151920
(413) 736-6324
Fax (413) 567-9615
lehrhard@comcast.net

**EXHIBIT A**

After recording mail to:

Ocwen Financial Corp.,FSB.
1675 Palm Beach Blvd.
West Palm Beach, FL 33401

TMS Loan No.  70468244/Robar

# AFFIDAVIT OF LOST NOTE

The undersigned, being duly sworn, do hereby state under oath that:

1. I am authorized to make this affidavit on behalf of:

   THE MONEY STORE/MASSACHUSETTS, INC.

2. The original note has been lost.
   Date of note: December 19, 1986  $53,700.00
   Corresponding Deed of Trust recorded in County Records.
   Hampden County Recorder BK 6333PG 306

3. The beneficiary is the lawful owner of the note and has not canceled, altered, assigned, pledged or hypothecated the note.

4. The note was lost or destroyed and cannot be produced.  The note was not located after a thorough and diligent search which consisted of a complete search of institutional records of the beneficiary.  If the Note is located by the undersigned, the undersigned agrees that it will not hereafter assign, transfer, pledge, hypothecate, encumber or otherwise dispose of the Note or any interest therein.

5. This Affidavit is intended to be relied on by any purchaser, its successors and assigns.

   Executed on March 28, 1997 on behalf of:

   THE MONEY STORE/MASSACHUSETTS, INC.

   By: *Susan M Bradley*
   Susan Bradley, Vice-President

## NOTARY ACKNOWLEDGMENT

STATE OF California
COUNTY OF Sacramento
On before me, Chantel Fashano , a Notary Public, personally appeared
Susan M. Bradley whose name is subscribed to the within instrument and acknowledged
to me that she executed the same in her authorized capacity and that by her signature on the instrument. the
entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal

*Chantel Fashano*

_____. Notary Public

CHANTEL FASHANO
Comm. # 1084606
NOTARY PUBLIC CALIFORNIA
Sacramento County
My Comm. Expires Jan 28, 2000

Loan No. 70468244/Robar



0 3 2 1 3 5 8 6
2830685 01-003 Pg 1

Account Number __70468244_____

Customer Name ___Robert W. Robar and_____
                   Joan A. Robar

Loan Amount ____$53,700.00_____

Date Of Loan _____December 19, 1986_____

## Allonge To Mortgage Note

Pay to the order of:

### OCWEN FEDERAL BANK FSB

TMS Mortgage Inc.

By: _Susan M Bradley_____        Date: __March 28, 1997_____
Susan M. Bradley
Vice President & Assistant Director

0 3 2 1 3 5 9 7
2830685 01-003 Pg 1

21-05-002750-0

WILBRAHAM

Jantucket Robar
704 L 8 244

## MORTGAGE

THIS MORTGAGE is made this .19th.. day of ...December............................
19. 86., between the Mortgagor, .Robert. W.. &. Joan. A.. Robar.................................
...................................................... (herein "Borrower"), and the Mortgagee,
THE MONEY STORE/MASSACHUSETTS, INC. a corporation organized and existing under the laws of the Com-
monwealth of Massachusetts, whose address is 389 Worcester Rd., Framingham, Mass. 01701 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ .53,700.00......................
which indebtedness is evidenced by Borrower's note dated .December..19,.1986..... and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the
indebtedness, if not sooner paid, due and payable on .January. 5,. 2002.....;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment
of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and
the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant
and convey to Lender, with power of sale, the following described property located in the County of ..Hampden......
.............. State of Massachusetts:

    SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF



0 5 2 1 3 6 0 5
2830685 01-001 Pg 1

BEING THE SAME PREMISES CONVEYED TO THE MORTGAGORS HEREIN BY DEED DATED 11/21/84
AND RECORDED IN SAID REGISTRY OF DEEDS IN BOOK 5719, PAGE 76.

which has the address of ...52. Crystal. Avenue.....................Springfield................
                             [Street]                                       [City]
Massachusetts......... 01108 ...............(herein "Property Address"):
                [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage;
and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are
hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower
covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to encumbrances of record.

MASSACHUSETTS - THE MONEY STORE-3/82 - MODIFIED FNMA/SECOND MORTGAGE

2830685 01-001 Pg 2

Borrower and Lender covenant and agree as follows:

**al and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender. Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender. Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to ⬤nder, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority ⬤ this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity) without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of rights of occupancy in the property, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

Lender may consent to a sale or transfer if: (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable; (3) interest will be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including, for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified if required by Lender. To the extent permitted by applicable law, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and all reasonable costs and expenses of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons l



03 215 607
2830685  101-001  Po 3

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage BOOK 6 3 3 3 PAGE 3 0 9 due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such actions as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without cost to Borrower. Borrower shall pay all costs of recordation, if any.

---

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage under Seal.

|||||| 0 3 2 1 3 6 0 8
2830685 01-001 Pa 4

Robert W. Robar
Robert W. Robar                                    —Borrower

Joan A. Robar
Joan A. Robar                                      —Borrower

The Note secured by the Mortgage has:
a Principal Sum of. . $53,700.00
a Rate of Interest of . . . . 11.00%

a Period of Loan of . . . 180 months
Periodic Due Dates of . . . . . 5th of each month

COMMONWEALTH OF MASSACHUSETTS, . . . . . Hampden
. . . . . . . . . . . . . . . . . County ss: Wilbraham

On this . . Nineteenth . . . . . . day of . . December
appeared . . . . . Robert W. Robar & Joan A. Robar . . . . . . . . . . . . . . . . . . . 19. . 86 . . before me personally
and acknowledged the foregoing to be . . . . THEIR . . . . . free act and deed.

My Commission expires:09-07-90

Charles Collins/                     Notary Public

RETURN TO
THE MONEY STORE/MASSACHUSETTS, INC.
389 WORCESTER RD.
FRAMINGHAM, MA 01701

After Recording Return To
Richardson Consulting Group, Inc.
505-A San Marin Dr., Suite 110
Novato, CA  94945

**Ocwen Federal Bank FSB**
**The Forum, Suite 105**
**1665 Palm Beach Lakes Blvd.**
**West Palm Beach, FL  33401**

2830685

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## CORPORATION ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned Hereby grants, assigns and transfers to

Ocwen Federal Bank FSB

whose address is The Forum, Suite 105, 1665 Palm Beach Lakes Blvd., West Palm Beach, FL  33401, all beneficial interest under that certain Mortgage dated 19th day of December 1986, executed by, Mortgagor, THE MONEY STORE/MASSACHUSETTS, INC., and Mortgagee, Robert W. & Joan A. Robar, recorded as Document No. 92620, n Book 6333, Page 306, of the Official Records in the County Recorder's Office of Hampden County, State of Massachusetts, describing land therein as: 52 Crystal Avenue, Springfield, Massachusetts 01108.

### AS MORE PARTICULARLY DESCRIBED IN SAID MORTGAGE

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Carla M. Nott , Witness

Jeanette M. Prentice , Witness

Jeanette M Prentice
Dated: April 21, 1997

State of         California
County of       Sacramento

APR 2 1 1997
On _____ before me   Joan Bermudez  , a notary public, personally appeared
  Rene Wigen  , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

Notary Public     Joan Bermudez

Borr.     Robar
Loan #   0070468244

**TMS MORTGAGE INC. DBA THE MONEY STORE, Successor by merger to THE MONEY STORE/MASSACHUSETTS, INC.**

Rene Wigen

Asst Vice President
Certificate of Merger
attached as Exhibit "A"

0 4 0 6 6 5 3 1
2830685 01-009 Pg 1

Prepared by:  Jeanette M. Prentice / The Money Store, 3464 El Camino Ave., Ste. #145, Sacramento, CA 95821

**EXHIBIT B**

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MASSACHUSETTS

Aug 11/10/96
10:30

In re JOAN A. ROBAR,
    Debtor

CHAPTER 13
CASE NO. 95-43255

**JOINT MOTION OK THE MOVING PARTY TMS MORTGAGE INC., dba THE MONEY STORE, SUCCESSOR BY MERGER TO THE MONEY STORE/MASSACHUSETTS, INC. AND THE DEBTORS FOR ORDER APPROVING STIPULATION AND INCORPORATING SAME AS ORDER OF THE COURT**

WHEREAS:

1. On December 8, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Joan A. Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of August, 1995 through November, 1995;

2. On December 11, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Robert W.Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of November, 1994 through November, 1995 in case number 92-43340;

3. At the hearing before this Court on January 3, 1996 upon the Motion for Order Modifying the Automatic Stay described in Paragraph 1 above the Court ordered that the post-petition payment of $610.35 due for the month of December, 1995 be tendered to The Money Store

on or before January 5, 1996, and consolidated the further hearing upon said Motion with the hearing upon the Motion described in Paragraph 2 for January 10, 1996;



UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re JOAN A. ROBAR,<br>Debtor | CHAPTER 13<br>CASE NO. 95-43255 |

**STIPULATION**

WHEREAS:

1.  On December 8, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Joan A. Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of August, 1995 through November, 1995;

2. On December 11, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Robert W.Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of November, 1994 through November, 1995, in case number 92-43340;

3. At the hearing before this Court on January 3, 1996 upon the Motion for Order Modifying the Automatic Stay described in Paragraph 1 above the Court ordered that the post-petition payment of $610.35 due for the month of December, 1995 be tendered to The Money Store on or before January 5, 1996, and consolidated the further hearing upon said Motion with the hearing upon the Motion described in Paragraph 2 for January 10, 1996;

4. On January 5, 1996 the Debtor Joan A. Robar tendered payment to The Money Store of $610.35 as the post-petition payment due for December, 1995.

The parties hereby agree that both of the Motions described above shall be resolved as follows:

A.    Assuming that neither debtor tenders any additional post-petition payments during the month of January, 1996, then as of February, 1996 the parties agree that the Debtors shall then be delinquent for post-petition payments due for the five months of August, 1995 through November, 1995 and for January, 1996, each monthly payment due in the amount of $610.35 or a total of $3051.75;

B.    Beginning with the month of February, 1996 and continuing for four consecutive months thereafter (or a total of five months), the Debtors shall tender to The Money Store the regularly due monthly post-petition payment of $610.35 on the fifth (5th)day of each month and  an additional monthly payment of $610.35 (to be applied towards the five month delinquency described above) on the twentieth (20th) day of each month, or a total of $1220.70 for each of those five months;

C.    If the Debtors fail to tender any of the payments as described above in Paragraph B when due, (i.e. either payments due on the fifth day or the twentieth day of each of the five months), then after a "grace" period of three days after the due date, upon the filing with this Court of an Affidavit of Non-Compliance with this Court by the Attorney respresenting The Money Store with service of a copy of same upon the Debtor's attorney, this Court shall thereupon- without the necessity of further hearing before this Court- issue and Order of Relief from Stay for both of the respective Chapter 13 cases identified above.


TMS MORTGAGE INC., dba
The Money Store, successor by
merger to The Money Store/
Massachusetts, Inc.
By its Attorney

_____
ROBERT H. GREENE

Dated: January 9, 1996


JOAN A. ROBAR

By her Attorney

_Lawrence R. Ehrhard_
LAWRENCE R. EHRHARD

Dated: January 9, 1996

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re JOAN A. ROBAR,<br>Debtor | CHAPTER 13<br>CASE NO. 95-43255 |

**JOINT MOTION OF THE MOVING PARTY TMS MORTGAGE INC., dba THE MONEY STORE, SUCCESSOR BY MERGER TO THE MONEY STORE/MASSACHUSETTS, INC. AND THE DEBTORS FOR ORDER APPROVING STIPULATION AND INCORPORATING SAME AS ORDER OF THE COURT**

WHEREAS:

1. On December 8, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Joan A. Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of August, 1995 through November, 1995;

2. On December 11, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Robert W.Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of November, 1994 through November, 1995 in case number 92-43340;

3. At the hearing before this Court on January 3, 1996 upon the Motion for Order Modifying the Automatic Stay described in Paragraph 1 above the Court ordered that the post-petition payment of $610.35 due for the month of December, 1995 be tendered to The Money Store

on or before January 5, 1996, and consolidated the further hearing upon said Motion with the hearing upon the Motion described in Paragraph 2 for January 10, 1996;

4. On January 5, 1996 the Debtor Joan A. Robar tendered payment to The Money Store of $610.35 as the post-petition payment due for December, 1995.

5.   The parties have reached and executed a Stipulation to resolve the above-described Motions for Order Modifying Automatic Stay:

The parties hereby move this Court to approve said Stipulation and incorporate  said  Stipulation as the Order of this  Court.

TMS MORTGAGE INC., dba
The Money Store, successor by
merger to The Money Store/
Massachusetts, Inc.
By its Attorney

_____
ROBERT H. GREENE
130 Liberty Street-Unit 13A
Brockton MA 02401
Tel.: 508 588-7729

Dated: January 9, 1996

JOAN A. ROBAR

By her Attorney

_____
LAWRENCE R. EHRHARD
15 Mulberry Street
Springfield MA 01105
Tel.: 413 736-6324

Dated: January 9, 1996

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|

```
                                        CHAPTER 13
In re ROBERT W. ROBAR,      *           CASE NO. 92-43340
            Debtor          *
                            *
```

### STIPULATION

WHEREAS:

1.  On December 8, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Joan A. Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of August, 1995 through November, 1995 in case number 95-43255;

2. On December 11, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Robert W.Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of November, 1994 through November, 1995, in the above-identifed matter;

3. At the hearing before this Court on January 3, 1996 upon the Motion for Order Modifying the Automatic Stay described in Paragraph 1 above the Court ordered that the post-petition payment of $610.35 due for the month of December, 1995 be tendered to The Money Store on or before January 5, 1996, and consolidated the further hearing upon said Motion with the hearing upon the Motion described in Paragraph 2 for January 10, 1996;

4. On January 5, 1996 the Debtor Joan A. Robar tendered payment to The Money Store of $610.35 as the post-petition payment due for December, 1995.

The parties hereby agree that both of the Motions described above shall be resolved as follows:

A.    Assuming that neither debtor tenders any additional post-petition payments during the month of January, 1996, then as of February, 1996 the parties agree that the Debtors shall then be delinquent for post-petition payments due for the five months of August, 1995 through November, 1995 and for January, 1996, each monthly payment due in the amount of $610.35 or a total of $3051.75;

B.    Beginning with the month of February, 1996 and continuing for four consecutive months thereafter (or a total of five months), the Debtors shall tender to The Money Store the regularly due monthly post-petition payment of $610.35 on the fifth (5th) day of each month and   an additional monthly payment of $610.35 (to be applied towards the five month delinquency described above) on the twentieth (20th) day of each month, or a total of $1220.70 for each of those five months;

C.    If the Debtors fail to tender any of the payments as described above in Paragraph B when due, (i.e. either payments due on the fifth day or the twentieth day of each of the five months), then after a "grace" period of three days after the due date, upon the filing with this Court of an Affidavit of Non-Compliance with this Court by the Attorney respresenting The Money Store with service of a copy of same upon the Debtor's attorney, this Court shall thereupon- without the necessity of further hearing before this Court- issue and Order of Relief from Stay for both of the respective Chapter 13 cases identified above.


TMS MORTGAGE INC., dba                ROBERT W. ROBAR
The Money Store, successor by
merger to The Money Store/
Massachusetts, Inc.                   By his Attorney
By its Attorney

ROBERT H. GREENE                      LAWRENCE R. EHRHARD

Dated: January 9, 1996                Dated: January 9, 1996

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MASSACHUSETTS

```
_____    *
                             *        CHAPTER 13
In re ROBERT W. ROBAR,       *        CASE NO. 92-43340
        Debtor              *
_____    *
```

**JOINT MOTION OF THE MOVING PARTY TMS MORTGAGE INC., dba THE MONEY STORE, SUCCESSOR BY MERGER TO THE MONEY STORE/MASSACHUSETTS, INC. AND THE DEBTORS FOR ORDER APPROVING STIPULATION AND INCORPORATING SAME AS ORDER OF THE COURT**

WHEREAS:

1.  On December 8, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Joan A. Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of August, 1995 through November, 1995 in case number 95-43255;

2. On December 11, 1995 the secured creditor TMS Mortgage Inc., dba The Money Store, successor by merger to The Money Store/Massachusetts, Inc. ("The Money Store") filed a Motion for Order Modifying the Automatic Stay seeking an Order of Relief from Stay authorizing foreclosure of its mortgage from the debtor Robert W.Robar dated December 19, 1986 recorded at Book 6333 Page 306 at the Hampshire County Registry of Deeds (the "mortgage") on the property at 52 Crystal Avenue, Springfield, Massachusetts (the "property") on account of the alleged failure of said Debtor to tender post-petition payments, each in the amount of $610.35, for the months of November, 1994 through November, 1995 in the above-identified matter;

3. At the hearing before this Court on January 3, 1996 upon the Motion for Order Modifying the Automatic Stay described in Paragraph 1 above the Court ordered that the post-petition payment of $610.35 due for the month of December, 1995 be tendered to The Money Store on or before January 5, 1996, and consolidated the further hearing upon said Motion with the hearing upon the Motion described in Paragraph 2 for January 10, 1996;

4. On January 5, 1996 the Debtor Joan A. Robar tendered payment to
The Money Store of $610.35 as the post-petition payment due for
December, 1995.

5.  The parties have reached and executed a Stipulation to resolve
the above-described Motions for Order Modifying Automatic Stay:

The parties hereby move this Court to approve said Stipulation and
incorporate  said  Stipulation as the Order of this Court.


TMS MORTGAGE INC., dba                    ROBERT W. ROBAR
The Money Store, successor by
merger to The Money Store/
Massachusetts, Inc.                       By his Attorney
By its Attorney

_____                 _____
ROBERT H. GREENE                          LAWRENCE R. EHRHARD
130 Liberty Street-Unit 13A               15 Mulberry Street
Brockton MA 02401                         Springfield MA 01105
Tel.: 508 588-7729                        Tel.: 413 736-6324

Dated: January 9, 1996                    Dated: January 9, 1996

## CERTIFICATE OF SERVICE

I, Robert H. Greene, certify I served copies of the two attached
Stipulations and Joint Motions of the Moving Party TMS Mortgage Inc.
dba The Money Store and the Debtor my faxing copies of same to
Richard King, Chapter 13 Trustee at 508 755-7791 and mailing to P.O.
Box 16007, Worcester MA 01601 this 9th day of January, 1996.

_____
ROBERT H. GREENE

**EXHIBIT C**

# UNITED STATES BANKRUPTCY COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| IN RE: | |
|---|---|
| Joan A. Robar | IN BANKRUPTCY, Chapter 13 |
| | NO. 95-43255-HJB |
| **Debtor** | |

### MOTION OF Ocwen Federal Bank, FSB TO WITHDRAW ITS MOTION FOR RELIEF FROM AUTOMATIC STAY TO FORECLOSE MORTGAGE AND TO CANCEL HEARING SCHEDULED FOR JUNE 2, 1999

Now comes Ocwen Federal Bank, FSB (hereinafter "the Bank") and moves pursuant to withdraw its Motion for relief from the automatic stay to foreclose its mortgage because the debtors are now current of their post-petition payments. Therefore, the hearing scheduled for June 2, 1999 by the Court can be canceled.

Ocwen Federal Bank, FSB

By its Attorneys,

BARSH AND COHEN, P.C.

Lawrence P. Cohen, Esquire
220 Boylston Street
Chestnut Hill, MA  02467-2090
(617) 332-4700
[Dated: June 1, 1999]

ENTERED ON DOCKET
6/1/99

JUN 1  10 14 AM '99
U.S. BANKRUPTCY COURT
WORCESTER, MA.

Page 1

ENTERED ON DOCKET
6/1/99

(37)

# UNITED STATES BANKRUPTCY COURT FOR THE
## DISTRICT OF MASSACHUSETTS

**FILING FEE**

IN RE:

    Joan A. Robar

               **Debtor**

IN BANKRUPTCY, Chapter 13
NO. 98-43255-HJB
    95

## MOTION OF Ocwen Federal Bank, FSB
### FOR RELIEF FROM AUTOMATIC STAY TO FORECLOSE MORTGAGE
### OR IN THE ALTERNATIVE FOR ADEQUATE PROTECTION

       Now comes Ocwen Federal Bank, FSB (hereinafter "the Bank") and moves pursuant to Bankruptcy Code Section 362(d)(1), Section 362(d)(2)(A), and Section 362(d)(2)(B) for relief from the automatic stay provisions of 11 U.S.C. Sections 362(a)-(c) to foreclose its mortgage. **The moving party further requests that pursuant to Local Rule 4001-1(e) that this Court consider acting upon this Motion without a hearing if no opposition is filed by a party with standing on or before ten (10) days after service of this Motion.** In support of this Motion, the Bank states as follows:

       (1)    This Court has jurisdiction over this matter and the parties to this proceeding by virtue of 28 U.S.C. Sections 157 and 1334. This is a core proceeding as contemplated by 28 U.S.C. Sections 157(b)(1), (b)(2)(A), (G), and (O).

       (2)    On December 19, 1986, Joan A. Robar (hereinafter the "Debtor") borrowed from the Bank's assignor the sum of $53,700.00, which transaction is evidenced by a promissory note executed by the Debtor, a copy of which is attached hereto as Exhibit "A".

       (3)    The promissory note is secured by a mortgage of even date on the property known as 50-52 Crystal Avenue, Springfield, Massachusetts (hereinafter the Mortgaged Premises), which mortgage is recorded with Hampden County Registry of Deeds, Book 6333, Page 306, a copy of which mortgage is attached hereto as Exhibit "B".

       (4)    On July 24, 1995, the Debtor filed a Petition under Chapter 13 of the United States Bankruptcy Code. On April 11, 1996, the Debtor's plan was confirmed.

       (5)    Since the filing of the Chapter 13 plan, the Debtor has failed to make post-petition payments due the Bank as required under Chapter 13 of the Bankruptcy Code. Therefore, the Debtor is in default under Chapter 13, **having missed SEVEN (7) payments of $610.35 each, totaling $4,272.45 plus costs and attorney's fees to bring this motion.**

ENTERED ON DOCKET

3/10/99

27-1

27-2

# UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS

IN RE:

    Joan A. Robar

           Debtor

IN BANKRUPTCY, Chapter 13
No. 95-43255-HJB

## JOINT MOTION TO CONTINUE MOTION OF Ocwen Federal Bank, FSB FOR RELIEF FROM AUTOMATIC STAY TO FORECLOSE MORTGAGE OR IN THE ALTERNATIVE FOR ADEQUATE PROTECTION

    Now comes Ocwen Federal Bank, FSB (hereinafter "the Bank") and Joan A. Robar (hereinafter "the Debtor"), and move to continue the hearing scheduled for April 28, 1999 at 10:30 A.M. on the Bank's motion for relief from the automatic stay. The parties request that the Court set a hearing date at its convenience approximately 30 days hence by which time this matter should be fully resolved.

By her attorney,

_Lawrence R. Ehrhard_
Lawrence R. Ehrhard, Esquire
15 Mulberry Street
Springfield, MA 01105
(413) 736-6323

Dated: April 27, 1999

Ocwen Federal Bank, FSB

By its Attorneys,

BARSH AND COHEN, P.C.

_Lawrence P. Cohen_
Lawrence P. Cohen, Esquire
220 Boylston Street
Chestnut Hill, MA 02467
(617) 332-4700

ENTERED ON DOCKET
4/27/99

**EXHIBIT D**



7104 5400 2100 0237 6835

## MOSS, CODILIS, STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP

**PARTNERS**

**Gerald R. Moss**
*Licensed in CA*

**Codilis &
Stawiarski, PC**

*Ernest J. Codilis,
Licensed in CO, FL,
IL, TX*

*Leo C. Stawiarski, Jr.,
Licensed in CO, FL,
IL, TX*

**Morris, Schneider
& Prior, LLC**

*Arthur J. Morris,
Licensed in GA*

*Thomas E. Prior,
Licensed in GA*

*Randolph Schneider,
Licensed in GA*

**Fein, Such, Kahn &
Shepard, P.C.**

*Alan F. Such
Licensed in NJ, NY*

**Weltman,
Weinberg & Reis
Co, LPA**

*Larry R. Rothenberg
Licensed in OH*

October 22, 2001

Robert Robar
50-52 Crystal Avenue
Springfield, MA 01108

Re: 2830685

Property Address:    50-52 Crystal Avenue
Springfield, MA 01108-0000

Dear Robert Robar:

   This firm has been authorized by the Servicer (Ocwen Federal Bank FSB) and the Creditor of the above-referenced home loan (hereinafter referred to as "the Debt") to contact you regarding the status of your account.

   You are hereby provided formal notice that you are in default under the terms and conditions of the Note and Security Instrument (i.e. Deed of Trust, Mortgage, etc.) for failure to pay the required installments when due.

   This letter serves as further notice that Ocwen Federal Bank FSB intends to enforce the provisions of the Note and Security Instrument. You must pay the full amount of the default on this loan by the thirty-third (33rd) day from the date of this letter which is 11/24/2001 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). If you do not pay the full amount of the default, our client shall accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. If you received a bankruptcy discharge which included this debt, this notice is not intended and does not constitute an attempt to collect a debt against you personally. Notice provisions may be contained within your mortgage/deed of trust which notice may be required prior to foreclosure.

   You are hereby informed that you have the right to "cure" or reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and sale.

   As of **10/19/2001 the amount of the debt that we are seeking to collect is $3,479.34,** which includes the sum of payments that have come due on and after the date of default 08/05/2001, any late charges, periodic adjustments to the payment amount (if applicable), attorney fees and expenses of collection. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day that you pay may be greater. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

   Please note, however, that your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of the Note, failure to pay this default by **10/20/2001** will result in the assessment of an additional late charge, and your **11/05/2001** installment is still due on **11/05/2001** (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). In addition, any advances made by the Servicer to protect their lien position must be added to the total amount necessary to cure the default. Please disregard this notice if a payment sufficient to cure the default has already been sent.

## IMPORTANT INFORMATION CONERNING YOUR
## RIGHTS IS CONTAINED ON PAGE TWO

9200 E. MINERAL AVE., SUITE 115 • ENGLEWOOD, COLORADO 80112 • PH: (877) 836-5626

Page Two

**This law firm is attempting to collect a debt for our client, and any information obtained will be used for that purpose.**

**Federal law gives you thirty days after you receive this letter to dispute the validity of this debt or any part of it. If you notify this law firm <u>in writing</u> at the firm address within the thirty day period that the debt, or any portion thereof, is disputed, we will:**

1) **Provide to you, upon your written request, verification of the debt or a copy of any judgment entered against you.**
2) **Provide to you, upon your written request, the name and address of your original creditor, if the original creditor is different from the current creditor**

**Unless you dispute the debt within that 30 day period, we will assume that it is valid.**

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE COLLECTION AGENCY.

A "CURE" or "Reinstatement Right" similar to that described in the prior paragraph may be available in many states. NO PERSON IN THIS LAW OFFICE WILL GIVE YOU <u>ANY</u> LEGAL ADVICE. If, at any time, you make a written request to this law firm not to be contacted by phone at your place of employment, we will not do so. If, at any time, you make a written request to this law firm not to contact you, we will not do so, except by legal action. If you voluntarily surrender possession of the collateral specified herein, you could still owe additional monies after the money received from the sale of the collateral is deducted from the total amount you owe.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Ocwen Federal Bank FSB.

Ocwen Federal Bank FSB requests that all payments be made in **certified funds, cashier's check or money order(s)** payable to and mailed to Ocwen Federal Bank FSB, **Attention: Collections Department** to one of the below addresses **(always include Loan # with your payment):**

| **VIA Regular Mail** | **VIA Over Night Address** | **VIA Western Union Quick Collect** |
|---|---|---|
| Ocwen Federal Bank FSB | Ocwen Federal Bank FSB | Code City: Ocwen |
| PO Box 514577 | 12650 Ingenuity Drive | Code State: FL |
| Los Angeles, CA 90051-4577 | Orlando, FL 32826 | Reference: Loan Number |

All written correspondence should be forwarded to:
**Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP**
**P.O. Box 785051**
**Orlando, FL 32878-5051**.

Sincerely,

MOSS, CODILIS, STAWIARSKI, MORRIS,
SCHNEIDER & PRIOR, LLP

cc: Ocwen Federal Bank FSB

**EXHIBIT E**

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458

MAILING ADDRESS:
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389

TEL (617) 558-0500
FAX (617) 244-7304

SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND

December 28, 2001

Mr. Robert W. Robar
50-52 Crystal Avenue
Springfield, MA 01108

RE:     Loan No. 2830685
        50-52 Crystal Avenue, Springfield, MA

## NOTICE OF DEFAULT AND ACCELERATION

Dear Mr. Robar:

This office represents Ocwen Federal Bank, FSB (Lender) in regard to the Note and Mortgage on the above referenced loan. The Note and Mortgage are now in default as a result of your failure to make timely payments as provided for in said Note and Mortgage.

If you have not already been notified of your default by your Lender, you are hereby notified that you are required to cure your default within thirty (30) days after receiving this notice.  The amounts due as of December 28, 2001 are as follows:

| | |
|---|---|
| Past due amount (5 Payments of $610.35) | $ 3,051.75 |
| Late charges and fees (5 Months at $30.52) | $ 152.60 |
| BPO, appraisal, other | $ 1,129.45 |
| Total | $ 4,333.80 |

You are hereby notified that in order to cure the default, you are required to pay all past due payments plus attorneys' fees and costs. In addition, any payments that may become due between the date of this notice and the date the default is cured also must be paid.

If you fail to pay the total amount due in certified funds it will result in the Lender, without further notice to you, accelerating the entire balance outstanding under the Note including, but not limited to, the principal, interest, and all other outstanding charges and costs. Upon acceleration, we may start foreclosure proceedings.

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will obtain verification of the debt and will mail you a copy of such verification.

Upon written request within this thirty (30) day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This thirty (30) day period will run concurrently with the thirty (30) days in which you have a right to cure your default. Once the thirty (30) day period has expired, the Lender hereby notifies you that your Note is accelerated and it may commence foreclosure proceedings.

In addition, you are hereby advised that the mortgage secures any and all other obligations and liabilities that you may have under the terms of the Note, including without limitation, cost of collection and attorneys' fees.

You will be liable to the Lender, if allowed by law, for attorneys' fees and for any deficiency resulting from the sale of the mortgaged premises.

If you fail to cure your default within the time period required by the Note, and the loan is accelerated, you may still have the right to reinstate the loan. If you desire to reinstate the loan, you should immediately tender to this office an amount of money sufficient to bring the loan fully current and to pay the costs of foreclosure to date. If you are not able to reinstate your loan, you may provide a written explanation of your circumstances and any plan of payment, and your request will be evaluated by the Lender.

Please understand that the Lender may have the right to refuse to accept this tender and to insist upon the payment of the aggregate of all amounts due upon acceleration. You have the right to bring a court action to assert the non-existence of a default or any other defense that you might have to acceleration and sale.

Very truly yours,

Neil W. Heiger, Esquire
NWH/LXD/200112-0426

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**EXHIBIT F**

LAWRENCE R. EHRHARD
ATTORNEY AND COUNSELOR AT LAW
71 ACADEMY DRIVE
LONGMEADOW, MASSACHUSETTS 01106

TELEPHONE (413) 736-6324
FAX (413) 567-9615

January 26, 2002

Brian Duncan
Harmon Law Offices
PO Box 610389
Newton Highlands, MA 02461-0389

Re:    Loan No. 2830685
       50-52 Crystal Ave.
       Springfield, MA

Dear Mr. Duncan:

As I informed you in our recent conversation, I represent Robert and Joan Robar in connection with the claim of Ocwen Federal Bank for alleged past due mortgage payments on the above property and the bank's Notice of Default and Acceleration with regard to the same. Please be advised that the Robars owe nothing to Ocwen Federal Bank. Ocwen Federal and its predecessor in interest have been paid all amounts owed them to and through October of 2001. The last and final three mortgage payments of November and December 2001 and January 2002 were mailed and received by Ocwen Federal but refused and returned by the Bank.

Please be further advised that Robert and Joan Robar demand that Ocwen Federal Bank accept the last three payments (timely tendered to it) and provide my clients with a Discharge of Mortgage on the above property. Failing such acceptance and provision of a discharge, it is my intention to file on their behalf a lawsuit seeking injunctive relief, damages for breach of contract, and compensatory and punitive damages for unfair and deceptive trade acts and practices. Chapter 93A, as you are probably aware, also provides for payment of attorney fees to the aggrieved consumer.

The following facts and documentation concerning the mortgage history of the Robar's property show without doubt that all payments have been made which are owed under the mortgage. These facts and the attached documentation are also presented to you

so that in any subsequent litigation there can be no claim of ignorance on the part of Ocwen Federal or your firm. The facts clearly show that your client has been either grossly negligent throughout this matter or deliberately deceptive.

Robert Robar and Joan Robar had successive and overlapping Chapter 13 Plans filed which involved the subject property on Crystal Street in Springfield, Massachusetts. Mr. Robar's case was filed in 1992 (Case No. 92-43340) and Mrs. Robar's case in 1995 (Case No. 95-43255). Both Chapter 13 Plans were approved by the Bankruptcy Court and successfully completed with full discharges given to both parties in their respective cases. Because Mrs. Robar was filing (and did file) an amended plan subsequent to the initiation of her Chapter 13 case, she had a five month post-petition period when no payments on the mortgage were made to The Money Store (Ocwen Federal Bank's predecessor in interest). The Money Store filed a Motion for Relief from Stay so that it could begin foreclosure proceedings. Because of legal issues related to the overlapping chapter 13 cases as to the same property and practical issues related to recovery of money from any sale, a compromise was reached with The Money Store. A copy of the Stipulation and the Joint Motion for Approval of Stipulation and Order approving same and Incorporating as Order of the Court is enclosed for your record. Also enclosed is a copy of the Bankruptcy Court approval of the same.

The substance of the Stipulation is that the five months of post-petition arrearages would be paid in the five months of February through June of 1996 with five payments of $610.35 in addition to the regular mortgage payments of $610.35 for those months. Those payments were made and all arrearages eliminated. The Money Stores' computer and personnel (as well as those of Ocwen Federal) have, however, never credited these five payments to the Robars at any time in the last six years and still refuse to credit them for these payments. Hence the claim of a deficiency and the Notice of Default and Acceleration which this letter addresses. Such conduct is either grossly negligent or is a part of a pattern of fraud by Ocwen Federal in the belief that their typical consumer customer would never keep records sufficient to challenge their claim.

Ocwen Federal has already tried, subsequent to the Stipulation and payments under it, to foreclose on the Robar's property based on the claim that they were five payments behind in their mortgage. On March 9, 1999, Ocwen Federal through Attorney Lawrence Cohen filed a Motion for Relief from Stay on the basis that Mrs. Robar was seven months behind on the mortgage payments. I called Mr. Cohen and told him that their records were in error, that the Bank had not credited them on any paperwork for the double payments, that we had copies of all checks sent to the mortgage company, and these showed that they were completely current in all payments. I also filed an objection to the Motion for Relief from Stay denying all factual allegations made by Ocwen Federal. Attorney Cohen and I filed a joint motion to stay the hearing on the Motion for Relief from Stay; I sent him the recent checks and he confirmed the double payments were made. He then filed a Motion to Withdraw the request for Relief from Stay, which Motion to Withdraw was granted by the Court. The Motion to Withdraw was allowed and the Motion for Relief from Stay denied as moot. Copies of the motion for extension of time, the motion to withdraw with court allowance and the motion for relief from stay

with court denial are enclosed. <u>Note that Ocwen Federal through its lawyer in the Motion to Withdraw states that as of June 1, 1999, Mrs. Robar is current in all post-petition payments.</u>

All mortgage payments have been made and can be documented from June 1, 1999 (the date Attorney Cohen stated to the Bankruptcy Court that all payments were current) to date. Enclosed are copies of all checks sent to Ocwen Federal from January 1999 to January 2002. The March and April 2000 checks are missing. They can probably be recovered at some cost from the archives of SIS bank but that should not be necessary since Ocwen Federal's own records sent to my clients show they were received. Enclosed is a statement page from the Ocwen Federal detail transaction history with the receipt of the March and April 2000 checks highlighted. The payment certified mail, return receipt requested, of the November and December 2001 and January 2002 checks (which were refused by Ocwen) can be also documented if necessary in litigation.

In sum, Robert and Joan Robar have made all payments due on their mortgage; Ocwen Federal's claim of five payments owed is the result of a long-standing (negligent at best and fraudulent at worst) failure to credit them with the five double payments made in 1996 to The Money Store on the mortgage; and they are entitled to the acceptance of the last three payments on the mortgage and the receipt of a Discharge of Mortgage on the property. This letter should be considered as such a demand for a Discharge of Mortgage.

Should you have any questions, please call me. Anticipating your early response, I remain

Sincerely,

Lawrence R. Ehrhard

LRE:kn
Enclosures

CC:    Robert and Joan Robar

Express Mail
Return Receipt Requested

**EXHIBIT G**



**O C W E N**

April 18, 2002

Lawrence Ehrhard
Attorney and Counselor At Law
71 Academy Drive
Longmeadow, MA 01106

RE:    OFB Loan No. 2830685
       Borrower:    Robert Robar
       Property:    50-52 Crystal Avenue
                    Springfield, MA 01108

Dear Lawrence Ehrhard:

Ocwen Federal Bank FSB (Ocwen) would like to take this opportunity to thank you for your recent correspondence regarding the above referenced loan. We know that it took some effort on your part and truly appreciate you taking the time to bring your concerns to our attention. Below are the recaps and responses to the issues raised.

Concern 1    You stated you are representing Robert and Joan Robar on the loan above, therefore, you are stating that your clients are not past due on their mortgage payments as the Demand Notice of Default had indicated. In addition, you provide us with back copies of check to show as proof that all the payments have been made on the loan above.

Response     Please provide legible front and back copies of the cancelled check, in order for Ocwen to determine the exact date the payments in question were applied to the loan. After, we receive the requested information we will be more than happy to assist you with your request. However, we have enclosed a Transaction History from the prior servicer beginning with the year of 1993 through March 18, 1997. We have also enclosed a detailed Transaction History from Ocwen which will show all credits and disbursements that have been made to the loan by Ocwen. The history will also give the dates these transactions took place.

Concern 2    You are also requesting that Ocwen accept the last three payments that were returned to your clients and provide them with a Discharge of Mortgage on the loan above..

This statement is not to be construed as an attempt to collect a debt, but is being furnished for informational purposes only, and may be required under state and federal law.

Page Two
OFB Loan No. 2830685
April 18, 2002

Response     Unfortunately, we are not able to accept the payments that were returned to
your clients at this time. The payments were returned back to Mr. Robar
due to the funds was not enough to cure the default on the loan at that
time. In addition, there is an unpaid balance that is owed on the loan
above at this time therefore, we are unable to provide your client with a
Discharge of Mortgage. If you would like to make payment arrangements
or discuss the status of the loan you may contact James Coffey of our Loan
Resolution Department. You may reach Mr. Coffey at:

MOSS, CODILIS, STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP
12650 Ingenuity Drive
Orlando, FL 32826
Phone No. (888) 529-4348

We trust the information provided has fully addressed your concern. However, should
you have any further questions regarding this particular matter, please contact me directly
at (800) 241-9960, extension 5077.

If you have any inquiries in the future you may contact our Customer Relations
Department at (800) 746-2936, or forward any written correspondence to the following
address:

Ocwen Federal Bank FSB
Attention: Research Department
12650 Ingenuity Drive
Orlando, FL 32826

Sincerely,

*Kelly Branch*

Kelly Branch
Research Specialist
Ocwen Federal Bank FSB

This statement is not to be construed as an attempt to collect a debt, but is being furnished for informational purposes only,
and may be required under state and federal law.

**EXHIBIT H**

MOSS, CODILIS, STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP

July 11, 2002

Robert Robar

50-52 Crystal Avenue
Springfield, MA 01108-0000

Re: Loan Number:      2830685
    Property Address:  50-52 Crystal Avenue

Dear Customer(s):

This Law Firm has been engaged and authorized by Ocwen Federal Bank FSB
("Ocwen"), the servicer of your mortgage loan described above and creditor
to whom you are obligated to make payments, to contact you regarding the
past-due status of your mortgage loan account. If you have the desire to
remedy this situation we are authorized by Ocwen to assist you in trying
to reach that goal.

Moss, Codilis is authorized to present you with some of the alternatives
which you might have available regarding your delinquent mortgage loan.
Enclosed please find a brief description of these alternatives, as well as
the consequences of a potential foreclosure sale, and a separate request for
Financial Information. We ask you to consider the alternatives and complete
the Request for Financial Information. Your accurate and timely response to
the financial request will expedite and enhance our ability to review the
possible alternatives you may have with Ocwen. Please mail the completed
Request for Financial Information Form to the address below.

        Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP
                        Loan Resolution Dept.
                        12650 Ingenuity Dr
                        Orlando, FL 32826
                        Attention: Performing Loan Department

If you are currently in active bankruptcy, or if you received a bankruptcy
discharge, which included this debt, this communication is not intended to,
and does not constitute, an attempt to reaffirm your debt or to collect a
debt against you personally.

This firm is attempting to collect a debt and any information obtained will
be used for that purpose. Please review the alternatives and feel free to
contact me.

Yours Truly,
Loan Resolution Consultant
Toll Free Phone: 800-310-9229  Fax: 407-737-6232

encl: Request for Financial Information Form

IMPORTANT: SEE ENCLOSED INFORMATION REGARDING ALTERNATIVES TO FORECLOSURE

REALE/ALTLTR2.003

**Ocwen Federal**

# REQUEST FOR FINANCIAL INFORMATION

Loan #

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name | BORROWER'S NAME |
|---|---|

| SOCIAL SECURITY | HOME PHONE | WORK PHONE | Social Security Number | Home Phone | Work Phone |
|---|---|---|---|---|---|

| Mailing Address | Property Address |
|---|---|

## EMPLOYMENT please provide last pay stub from each employer

| Borrower Employer | | How long? | Co-Borrower Employer | | How long? |
|---|---|---|---|---|---|
| Position | Gross pay per period $ | How often paid? | Position | Gross pay per period $ | How often paid? |
| Number of Dependents | Net pay per period $ | Commission Bonus $ | Number of dependents | Net pay per period $ | Commission Bonus $ |
| Other monthly Income - Description | | Amount $ | Other monthly income - Description | | Amount $ |

## EXPENSES - Monthly

| Housing | | Miscellaneous | | Other | |
|---|---|---|---|---|---|
| Hazard Insurance | $ | Health Insurance | $ | Bank/Finance Loans | $ |
| Electric/Gas | $ | Medical Bills | $ | Charge Account (1) | $ |
| Phone | $ | Food | $ | Charge Account (2) | $ |
| Water & Sewer | $ | Auto (1) | $ | Charitable Contributions | $ |
| Home Repair | $ | Auto (2) | $ | Personal/Life Insurance | $ |
| Home Maintenance | $ | Auto Insurance | $ | Club/Union Dues | $ |
| Second Mortgage | $ | Gas | $ | Cable TV | $ |
| H.O.A. | $ | Auto Maintenance | $ | Religious Contributions | $ |
| Other | $ | Child Care | $ | Dry Cleaning | $ |
| Other | $ | Child Support | $ | Clothing | $ |
| Other | $ | Alimony | $ | Entertainment | $ |
| Other | $ | Other | $ | School Tuition | $ |
| Checking Account Balance $ | | Savings Account Balance $ | | CD's, Stocks, 401K, IRA, Etc. $ | |
| Approximate Value of Home $ | | Other Assets $ | | | |

Reason for original default (If applicable)

What is your understanding of any CURRENT special payment plans you may be under from the prior service of your loan?  (Please attach copies of any documentation which verifies this plan.)

## ACKNOWLEDGMENT AND AGREEMENT

Certification: I / We certify that the information provided in this Request for Financial Information is true and correct as of the date set forth opposite my/our signature(s) on this form and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained on this form may result in civil liability and/or criminal penalties. I / We authorize OCWEN to verify this information, including verification of employment and account balances.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|

**\* Provide Copies of the following: Current Bank Statements on all Accounts**
**Current Pay stubs**
**Tax Return from the last two years**
**W2's from the last two years**

EXHIBIT I

# EQUIFAX

Please address all future correspondence to:
Equifax Information Services, LLC.
P O Box 740256
Atlanta GA 30374
1 (800) 349-9960
M - F  9:00am to 5:00pm in your time zone.

# CREDIT FILE - Confirmation # : 228116247

Please have a copy of this file, which displays a confirmation number, when calling Consumer Services for assistance. As information is updated regularly, please call us within 60 days from the date of this credit file.

## Personal Identification Information

October 8, 2002

Robert W Robar
50 Crystal Av
Springfield, MA  01108

Social Security #:
Age:  54

Previous Address(es):
62 Crystal Ave, Springfield, MA  01108
52 Crystal Ave Apt 52, Springfield, MA  01108

Last Reported Employment:  Retired

Previous Employment(s):  Owner Operator, R R Coins, Worceste, MA
Since 01/70

## Credit Account Information (For your security, the last 4 digits of your account number(s) have been replaced by *)

| Company Name | Account Number | Whose Acct | Date Opened | Months Reviewed | Date of Last Activity | High Credit | Terms | Balance | Past Due | Status | Date Reported |
|---|---|---|---|---|---|---|---|---|---|---|---|
| American Air/Cbusa | 200142248* | I | 03/02 | 6 | 09/02 | $1500 | 10 | $121 | | R1 | 09/02 |
| AMOUNT IN H/C COLUMN IS CREDIT LIMIT |
| Capital One | 529115209056* | I | 11/01 | 10 | 09/02 | $652 | 15 | $376 | | R1 | 09/02 |
| CREDIT CARD |
| Capital One | 488236173756* | I | 06/00 | 27 | 09/02 | $1314 | 33 | $1100 | | R1 | 09/02 |
| CREDIT CARD |
| Capital One | 412174159415* | I | 09/99 | 36 | 09/02 | $508 | 10 | $201 | | R1 | 09/02 |
| CREDIT CARD |
| Citi Cards Cbsdna | 542418029439* | I | 05/87 | 19 | 08/94 | $1500 | | $0 | | R1 | 07/94 |
| Citifinancial | 607459123155* | I | 08/91 | | 02/99 | $342 | 342 | $342 | | I9 | 07/02 |
| CHARGED OFF ACCOUNT |
| Address : PO Box 17069  Baltimore, MD 21297-0194    Phone # : (410) 332-3000 |
| Gateway/Cbusa Na | 601176601127* | I | 06/01 | 1 | 07/01 | $1400 | | $0 | | R1 | 07/01 |
| AMOUNT IN H/C COLUMN IS CREDIT LIMIT |
| JC Penney / Monogr | -194677* | I | 12/99 | 33 | 09/02 | $300 | 15 | $40 | | R1 | 09/02 |
| CHARGE |
| AMOUNT IN H/C COLUMN IS CREDIT LIMIT |
| Kay Jewelers | 1212-303426* | I | 12/99 | 30 | 01/02 | $1023 | 75 | $0 | | R1 | 06/02 |
| CHARGE |
| Ocwen Federal | 283* | I | 12/86 | 10 | 09/01 | $53700 | 610 | | | I | 07/02 |
| ACCOUNT INCLUDED IN WEP FILED BY ANOTHER PERSON |
| FORECLOSURE PROCESS STARTED |
| Providian Bancorp | 448561140085* | I | 12/98 | 45 | 09/02 | $3000 | 89 | $2960 | | R1 | 09/02 |
| CREDIT CARD |
| AMOUNT IN H/C COLUMN IS CREDIT LIMIT |
| Providian Bancorp | 448561040081* | | 12/98 | | 09/01 | Lost or stolen card | | | | | 09/01 |
| CREDIT CARD |
| AMOUNT IN H/C COLUMN IS CREDIT LIMIT |
| Sears Mastercard | 512107185238* | I | 07/01 | 13 | 09/02 | $2000 | 10 | $1902 | | R1 | 09/02 |
| CREDIT CARD |
| AMOUNT IN H/C COLUMN IS CREDIT LIMIT |

(Continued on reverse)

Page 1 of 2

## Credit Account Information - Continued

| Company Name | Account Number | Whose Acct | Date Opened | Months Reviewed | Date of Last Activity | High Credit | Terms | Balance | Past Due | Status | Date Reported |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Wal-Mart CHARGE | 603220330005* | I | 10/99 | 35 | 09/02 | $1375 | 32 | $746 | | R1 | 09/02 |

AMOUNT IN H/C COLUMN IS CREDIT LIMIT

## Companies that Requested your Credit File

| | |
|---|---|
| 10/08/02 Equifax - Disclosure | 10/05/02 Household Bank |
| 09/27/02 AR-Capital One | 09/20/02 Citifinancial |
| 09/18/02 Household Bank | 09/16/02 Chase Credit Research, Inc.  AMERIQUEST MORTGAGE |
| 09/04/02 AR-Assoc/Citibank SD | 09/04/02 AR-Your Bank/Gateway Co's |
| 09/02/02 AR-Ocwen Federal Bank FSB | 08/25/02 AR-JC Penney / Monogram Credit |
| 08/24/02 Ditech.Com | 08/08/02 AR-Assoc/Citibank SD |
| 08/01/02 AR-Capital One | 07/29/02 AR-Wal-Mart |
| 07/22/02 PRM-Home Loan Investment Bank | 07/15/02 AR-Capital One |
| 07/15/02 AR-Assoc/Citibank SD | 07/05/02 AR-Assoc/Citibank SD |
| 06/16/02 PRM-MCI | 06/02/02 AR-Ocwen Federal Bank FSB |
| 05/29/02 PRM-Home Loan Investment Bank | 05/26/02 AR-JC Penney / Monogram Credit |
| 05/24/02 AR-Capital One | 04/29/02 AR-Wal-Mart |
| 04/28/02 AR-Capital One | 04/01/02 AR-Wal-Mart |
| 03/22/02 AR-Capital One | 03/02/02 AR-Ocwen Federal Bank FSB |
| 02/26/02 AR-JC Penney / Monogram Credit | 02/23/02 Worldcom Wireless |
| 02/22/02 AR-Capital One | 02/19/02 PRM-MCI |
| 02/02/02 AR-Ocwen Federal Bank FSB | 01/28/02 AR-Capital One |
| 01/28/02 AR-Wal-Mart | 01/23/02 AR-Wal-Mart |
| 01/19/02 AR-Capital One | 01/07/02 AR-Wal-Mart |
| 12/17/01 AR-Wal-Mart | 12/12/01 PRM-Ameriquest Mortgage |
| 11/25/01 AR-JC Penney / Monogram Credit | 11/09/01 AR-Capital One |
| 11/02/01 AR-Ocwen Federal Bank FSB | 10/30/01 AR-Wal-Mart |
| 10/25/01 AR-Assoc/Citibank SD | 10/15/01 PRM-Ameriquest Mortgage |
| 08/13/01 Sears | 08/11/01 Household Bank |
| 07/17/01 Sears | 07/05/01 Equifax-Auto MTNC Update |
| 06/09/01 Equifax - Disclosure  ACIS 116009239 | 05/16/01 Banknorth Massachusetts |
| 03/19/01 Equifax - Disclosure | 02/20/01 Household Bank |

**EXHIBIT J**



**O C W E N**
P.O. Box 57002
Irvine, CA 92619-7002

ROBERT ROBAR
50-52 CRYSTAL AVENUE
SPRINGFIELD MA
01108

NOTIFICATION DATE:
02/05/03

LOAN NUMBER:
2830685

PROPERTY LOCATION:
50 52 CRYSTAL AVENUE
SPRINGFIELD MA 01108

## NOTICE OF LENDER-PLACED INSURANCE

Dear Robert Robar:

We have not received the proof of insurance we previously requested from you for the property location referenced above. At your expense, we have purchased insurance to protect OCWEN FEDERAL BANK, FSB's interest in the property. The cost for obtaining this insurance is $82.34. Please note that you are solely responsible for the repayment of this cost.

If you purchase or have purchased an insurance policy for the above mentioned property, we will cancel this insurance coverage, described in the attached Evidence of Insurance, as of the effective date of the insurance policy you provide. If the effective date on the insurance policy you have purchased is not the same as or prior to your old policy expiration date of 01/18/03, there will be a premium charge for the lapse in coverage.

If you have purchased your own insurance policy, please send a copy of the policy, including your loan number to:

OCWEN FEDERAL BANK, FSB
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 57002
IRVINE, CA 92619-7002

The coverage Ocwen purchased is limited and may not adequately protect your interest. Residential property losses under this coverage will be paid at replacement value subject to certain exceptions, such as actual cash value for roofs. It does not cover the following: loss, damage or theft to personal property; additional living expense or rents; worker's compensation; injuries to persons or property for which you may be liable; or damages due to flood or earthquake. The amount of coverage may be less than you had before. The insurance that we purchase provides coverage only for the outstanding principal loan balance. You are responsible for payment of the premium and any applicable fees, which result from our purchase of this coverage.

If you have any questions, please contact our Customer Service Department at 1-888-380-3948. Your call may be monitored for quality assurance.

Sincerely,

OCWEN FEDERAL BANK, FSB
Customer Service Department

Ocwen Federal Bank FSB is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

# FIDELITY AND DEPOSIT COMPANY OF MARYLAND
## EVIDENCE OF INSURANCE

THIS IS NOT A POLICY OF INSURANCE, BUT AN EVIDENCE OF INSURANCE CERTIFYING COVERAGE UNDER THE POLICY NUMBER SHOWN BELOW ISSUED TO THE LENDER TO PROTECT THEIR INTEREST IN YOUR MORTGAGED PROPERTY. THE LENDER HOLDS THE POLICY EXPLAINING THE COVERAGE BEING PROVIDED. A SUMMARY OF COVERAGE IS PROVIDED ON THE REVERSE SIDE FOR YOUR INFORMATION AND IS NOT INTENDED TO BE ALL-INCLUSIVE. IF YOU HAVE ANY QUESTIONS REGARDING YOUR INSURANCE, THE AMOUNT OF COVERAGE PROVIDED, OR BELIEVE THERE IS AN ERROR IN OUR RECORDS, PLEASE CALL: **CUSTOMER SERVICE AT 1-888-380-3948.**

POLICY NUMBER: OFC04200021    EVIDENCE OF INSURANCE NUMBER: LRE420743259

NOTICE DATE: 02/05/03    COVERAGE PERIOD: 01/18/03 TO 02/03/03

INSURED NAME AND ADDRESS:          BORROWER NAME & ADDRESS:

OCWEN FEDERAL BANK, FSB            ROBERT ROBAR
ITS SUCCESSORS AND/OR ASSIGNS      50-52 CRYSTAL AVENUE
P O BOX 57002                      SPRINGFIELD MA
IRVINE, CA 92619-7002              01108

LOAN NUMBER:                       PROPERTY LOCATION:

2830685                            50 52 CRYSTAL AVENUE
                                   SPRINGFIELD MA 01108

| LIMIT OF LIABILITY | | | | |
|---|---|---|---|---|
| STRUCTURE | ADDITIONAL STRUCTURES | CONTENTS | ALE/ LOSS OF USE | LIABILITY |
| $221,000.00 | $22,100.00 | $ Not covered | $ Not covered | $ Not covered |

DEDUCTIBLE:      Occupied: $1,000.00          PREMIUM CHARGE: $    82.34
                 Vacant: $1,000.00            SERVICE FEE:    $     0.00
                 V&MM: $1,000.00 Or 1%        SURCHARGES:     $     0.00
PERILS INSURED:  RESIDENTIAL-FIRE, EC,        TOTAL COST:     $    82.34
                 & SPECIAL FORM

THIS COVERAGE IS LIMITED AND MAY NOT ADEQUATELY PROTECT YOUR INTEREST. PLEASE CONTACT AN INSURANCE AGENT OR CARRIER OF YOUR CHOICE TO ASSIST YOU IN EVALUATING YOUR OWN INSURANCE NEEDS AND TO ADVISE YOU HOW TO OBTAIN THE BEST POLICY AT THE LOWEST COST.

## THIS IS EXCESS INSURANCE.

02/11/03   14:05 FAX 413 733 7722          PALMER GOODELL

# ACORD INSURANCE BINDER

| | | | OP ID 2R | DATE 02/11/03 |

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.**

| PRODUCER | COMPANY |
|---|---|
| PHONE (A/C, No, Ext): 413-781-5940 413-733-7722 | SAFETY INSURANCE CO |

Palmer Goodell Insurance
P.O. Box 9040
Springfield MA 01102-9040
Personal Insurance

| | BINDER # 73116 |
|---|---|

| CODE: | SUB CODE: |
|---|---|
| AGENCY CUSTOMER ID: ROBAJO2 | |

| | EFFECTIVE DATE | TIME | | EXPIRATION DATE | TIME |
|---|---|---|---|---|---|
| | 02/11/03 | | AM PM | 03/11/03 | X 12:01 AM NOON |

THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #:   **APP PENDING**

DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location)

**INSURED**

Joan A Robar Robert Robar
52 Crystal Avenue
Springfield MA 01108

Form 03  policy term is 1/18/03 to 1/18/04
52 crystal ave, springfield, ma   01108

## COVERAGES

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | LIMITS AMOUNT |
|---|---|---|---|---|
| **PROPERTY**  CAUSES OF LOSS  BASIC ☐ BROAD ☐ SPEC ☐ | A. Dwelling B. Other Structures C. Personal Property E. Pers Liability Ea Occur | 250 | | 221000 22100 154700 300000 |

| **GENERAL LIABILITY** | | | |
|---|---|---|---|
| ☐ COMMERCIAL GENERAL LIABILITY | EACH OCCURRENCE | $ | |
| ☐ CLAIMS MADE ☐ OCCUR | FIRE DAMAGE (Any one fire) | $ | |
| | MED EXP (Any one person) | $ | |
| | PERSONAL & ADV INJURY | $ | |
| | GENERAL AGGREGATE | $ | |
| RETRO DATE FOR CLAIMS MADE: | PRODUCTS - COMP/OP AGG | $ | |
| **AUTOMOBILE LIABILITY** | COMBINED SINGLE LIMIT | $ | |
| ANY AUTO | BODILY INJURY (Per person) | $ | |
| ALL OWNED AUTOS | BODILY INJURY (Per accident) | $ | |
| SCHEDULED AUTOS | PROPERTY DAMAGE | $ | |
| HIRED AUTOS | MEDICAL PAYMENTS | $ | |
| NON-OWNED AUTOS | PERSONAL INJURY PROT | $ | |
| | UNINSURED MOTORIST | $ | |
| | | $ | |
| **AUTO PHYSICAL DAMAGE**  DEDUCTIBLE ☐ ALL VEHICLES ☐ SCHEDULED VEHICLES | ACTUAL CASH VALUE | | |
| ☐ COLLISION | STATED AMOUNT | $ | |
| ☐ OTHER THAN COL: | OTHER | | |
| **GARAGE LIABILITY** | AUTO ONLY - EA ACCIDENT | $ | |
| ANY AUTO | OTHER THAN AUTO ONLY: | | |
| | EACH ACCIDENT | $ | |
| | AGGREGATE | $ | |
| **EXCESS LIABILITY** | EACH OCCURRENCE | $ | |
| UMBRELLA FORM | AGGREGATE | $ | |
| OTHER THAN UMBRELLA FORM  RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | $ | |
| | WC STATUTORY LIMITS | | |
| WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY | E.L. EACH ACCIDENT | $ | |
| | E.L. DISEASE - EA EMPLOYEE | $ | |
| | E.L. DISEASE - POLICY LIMIT | $ | |
| SPECIAL CONDITIONS/ OTHER COVERAGES | FEES | $ | |
| | TAXES | $ | |
| | ESTIMATED TOTAL PREMIUM | $ | |

## NAME & ADDRESS

| | X MORTGAGEE   ADDITIONAL INSURED |
|---|---|
| | ☐ LOSS PAYEE |
| OCWEN FEDERAL BANK, FSB LN 2830685 ISAOA PO BOX 57002 IRVINE CA 92619 | LOAN # 2830685 |
| | AUTHORIZED REPRESENTATIVE  Personal Insurance |

ACORD 75-S (1/98)          NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE          © ACORD CORPORATION 1993

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROBERT W. ROBAR
JOAN A. ROBAR

## DEFENDANTS

OCWEN FEDERAL BANC, FSB
OCWEN FINANCIAL CORPORATION

**(b)** County of Residence of First Listed Plaintiff  HAMPDEN
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
LAWRENCE R. EHRHARD
71 ACADEMY DR.  (413) 736-6304
LONGMEADOW MA 01106

Attorneys (If Known)

05 - 30127 - KPN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

☑ 3  Federal Question
        (U.S. Government Not a Party)

☐ 2  U.S. Government
        Defendant

☑ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 1 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☑ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      another district
      (specify)

☐ 6 Multidistrict
      Litigation

☐ 7 Appeal to District
      Judge from
      Magistrate
      Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC § 1332(a)(3)

Brief description of cause:

## VII. REQUESTED IN
## COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMAND $
IN EXCESS OF $75000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

## VIII. RELATED CASE(S)
## IF ANY

(See instructions):
JUDGE

DOCKET NUMBER

DATE
5/31/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only) _ROBERT A ROBAR_ v _OCEAN FEDERAL BANK._

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

        I.      160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

        II.     195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.              for patent, trademark or copyright cases

        III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

        IV.     220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

        V.      150, 152, 153.          # 05 - 30127 - KPN

3.  Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                        YES              NO    ✓

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                        YES              NO    ✓

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                        YES              NO    ✓

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                        YES              NO    ✓

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                        YES    ✓         NO -

        A.      If yes, in which division do all of the non-governmental parties reside?

                Eastern Division            Central Division                     Western Division    ✓

        B.      If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

                Eastern Division            Central Division                     Western Division

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                        YES              NO

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _LAWRENCE R EHRHARD_

ADDRESS _71 ACADEMY DRIVE, LONGMEADOW MA 01106_

TELEPHONE NO. _(413) 736-6324_

(CategoryForm.wpd - 5/2/05)

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.